Grace I. CLARY, Appellant,

v.

**FIFTH AVENUE CHRYSLER CENTER,
INC., and Chrysler Corpora-
tion, Appellees.**

No. 946.

Supreme Court of Alaska.

May 5, 1969.

---

Theodore R. Dunn, Warren W. Matthews, Jr., of Burr, Boney & Pease, Anchorage, for appellant.

James J. Delaney, Jr., Delaney, Wiles, Moore & Hays, Charles W. Hagans, Hagans & Opland, James K. Singleton, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

NESBETT, Chief Justice.

The question presented is whether this court should adopt for Alaska the doctrine of strict liability in tort in product liability cases.

Appellant purchased a new Plymouth Fury I station wagon automobile from appellee Fifth Avenue Chrysler Center, Inc., which had been manufactured by appellee Chrysler Corporation. Some three weeks after she had taken delivery appellant became ill after she had had occasion to sit in the automobile for an extended period of time with the engine running, with the heater on full force, and with the side window rolled partially down.

In her complaint appellant alleged that she had suffered brain damage from carbon monoxide poisoning as the result of various defects in the design and manufacture of the automobile.

At the close of appellant's case the trial court entered a directed verdict against her and in favor of appellees with respect to that portion of her suit which would have imposed strict liability in tort upon both appellees. The trial court found that appellant had produced sufficient evidence to present a jury question on the issues of negligence and breach of warranty, but had failed to present evidence sufficient to present a jury question on the issue of strict liability.

The trial court instructed the jury on negligence and warranty, but refused to give appellant's proposed instruction number 21 which listed 16 duties of a manufacturer with respect to carbon monoxide; appellant's proposed instruction number 5 which would have instructed the jury that:

A manufacturer is strictly liable when an article he places on the market proves to have a defect that causes injury to a human being.

and appellant's proposed instruction number 6 which would have instructed the jury that a

retailer is strictly liable when he sells an article which proves to have a defect that causes injury to a human being.

We are of the opinion that the the trial court should have given appellant's proposed instructions numbered 5 and 6. Appellant had introduced evidence that certain body drain plugs had been found to be missing from the automobile and that a loose clamp was found on the exhaust line after an inspection made after the incident alleged to have caused carbon monoxide poisoning. There was testimony that these defects could have permitted carbon monoxide to enter the passenger compartment. There was also evidence that the rear window would occasionally fall open due to some undetermined defect, although there was no evidence that this

window was open or down at the time appellant was alleged to have been poisoned. The evidence disclosed that the car had been in appellant's possession something more than two weeks and had been driven about 1,000 miles at the time of the incident complained of.

In granting appellees' motions for directed verdict on the issue of strict liability the court stated in part:

It seems to me that when we have a new car and we have it going through the hands of Chrysler Sales Corporation whatever it is and through Fifth Avenue Chrysler, it makes no difference, we're still putting a new car into commerce and if the defect existed and if the defect caused the damage, that the damage— that the manufacturer is not insulated by the reason of the fact that it went through the hands of the sales organization and of the dealer. However, we have here a period of at least two weeks between the time that this car was delivered and the time of the alleged incident. What happened to the car in that two weeks I don't know. Whether or not the drain plug dropped out during that period of time when they were in there properly, I don't know. Whether or not the clamp came loose, I don't know. Whether or not the window did or didn't come down when it shouldn't, I don't know. There isn't any evidence at all on any of those points. It seems to me then that under this doctrine of strict liability, it's absolutely essential, in order to rely on that doctrine that you've got to show that the—that the vehicle in question here was in the same condition it was at least at the time that it left the Fifth Avenue Chrysler. *There hadn't been any evidence at all along that line that I can find and I don't think that the inferences Mr. Matthews has asked me to draw are valid and as of this time I do not intend to put the case to the jury on the issue of strict liability. I do intend to put it to the jury on the issue of negligence.* (Emphasis supplied).

The court then granted a directed verdict to Chrysler Corporation on the issue of strict liability.

Later in the proceedings however, when discussing implied warranty of fitness, the following took place:

MR. DELANEY: Your Honor, ah, we would like to inquire with regard to Chrysler Corporation. It's my understanding that an essential element of a breach of warranty is that a defect exist also at the time of, ah—it was sold.

THE COURT: I'm starting out with the idea that this defect did, at least if there was sufficient evidence to go to the jury as to whether or not the defect existed at the time it was sold by Chrysler, by Chrysler Sales Corporation and by Fifth Avenue Chrysler. I'm satisfied with a new car like this that, we just wouldn't have gotten the result that we got unless there's something wrong with it.

We are of the view that the same evidence which the trial judge found sufficient to take the case to the jury on the issue of negligence was sufficient in this instance to warrant giving the case to the jury on the issue of strict liability.

The facts before us are similar in many respects to those considered by the Supreme Court of California in Vandermark v. Ford Motor Co.[1] There appellant was severely injured when the new automobile he had purchased some six weeks and 1,500 miles earlier went out of control on the highway and crashed into a telephone pole. Appellant's expert witness on the operation of hydraulic automobile brakes testified that in his opinion the brakes of the automobile applied themselves because of a failure of the piston in the master cylinder to operate as intended. The trial court struck the testimony of the possible causes of the failure of the hydraulic system on the ground that there was no direct evi-

1. 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964).

dence that any one or more of the causes existed and it rejected plaintiff's offer to prove that all of the possible causes were attributable to defendants. The supreme court held that the ruling was error on the ground that appellants were entitled to establish the existence of a defect and of appellee's responsibility for the defect by circumstantial evidence in view of the fact that the damage to the automobile in the collision prevented determining whether or not the hydraulic master cylinder assembly had been properly installed and adjusted before the accident.

In so holding the court reaffirmed its rule of Greenman v. Yuba Power Products, Inc.:[2]

> A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.

The court went on to hold that since appellants had also introduced evidence that the defect was caused by some negligent conduct for which the Ford dealer was responsible, that the trial court erred in granting a non-suit with respect to the retailer stating:

> Retailers like manufacturers are engaged in the business of distributing goods to

the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products. * * * In some cases the retailer may be the only member of that enterprise reasonably available to the injured plaintiff. In other cases the retailer himself may play a substantial part in insuring that the product is safe or may be in a position to exert pressure on the manufacturer to that end; the retailer's strict liability thus serves as an added incentive to safety. Strict liability on the manufacturer and retailer alike affords maximum protection to the injured plaintiff and works no injustice to the defendants, for they can adjust the costs of such protection between them in the course of their continuing business relationship. Accordingly, as a retailer engaged in the business of distributing goods to the public, Maywood Bell is strictly liable in tort for personal injuries caused by defects in cars sold by it.[3]

The states that have judicially embraced strict tort liability are divided between the approaches of *Greenman* and the Restatement of (Second) of Torts section 402A (1965).[4] Five states, Nevada, Oklahoma, New Jersey, New York, and Florida appear to follow *Greenman*.[5] Twelve juris-

---

2. 59 Cal.2d 57, 27 Cal.Rptr. 697, 700, 377 P.2d 897, 900, 13 A.L.R.3d 1049 (1962).

3. Vandermark v. Ford Motor Co., 61 Cal. 2d 256, 37 Cal.Rptr. 896, 899, 391 P. 2d 168, 171–172 (1964).

4. The Restatement provides in part as follows:
   (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
   (a) the seller is engaged in the business of selling such a product, and
   (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

   (2) The rule stated in Subsection (1) applies although
   (a) the seller has exercised all possible care in the preparation and sale of his product, and
   (b) the user or consumer has not bought the product from or entered into a contractual relation with the seller.

5. Shoshone Coca-Cola Bottling Co. v. Dolinski, 82 Nev. 439, 420 P.2d 855, 857 (1966); Marathon Battery Co. v. Kilpatrick, 418 P.2d 900, 914–915 (Okl. 1965); Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305, 311–312, 16 A.L.R.3d 670 (1965); Goldberg v. Kollsman Instrument Corp., 12 N.Y. 2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81, 85 (1963); Royal v. Black & Decker Mfg. Co., 205 So.2d 307 (Fla.Dist.Ct. App.1967).

dictions follow the Restatement: Arizona, Connecticut, Kentucky, Mississippi, Missouri, Pennsylvania, Tennessee, Texas, Wisconsin, Oregon, and Illinois.[6] In addition, several federal courts, in the absence of controlling state decisions, have adopted the Restatement as the law which would be applied by the state courts of Colorado, Montana, South Dakota, and Indiana.[7] Minnesota has adopted strict tort liability but has not yet distinguished between *Greenman* and the Restatement.[8]

█ As in *Greenman* and *Vandermark,* appellees herein have urged the application of statutory provisions governing sales warranties.[9] The argument is that the law of sales contract warranties as construed by the courts affords the same protection to the consumer as that provided by the rule of strict liability. We have considered appellees contentions but are of the view that the doctrine of strict liability in tort as defined in *Greenman* affords the most logical, least technical, and most comprehensive coverage with respect to the factual situations where it is applicable.[10]

The purpose of imposing such strict liability on the manufacturer and retailer is to insure that the cost of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves. Sales warranties serve this purpose fitfully at best.

Appellee Fifth Avenue Chrysler, Inc. argues that since appellant has not shown prejudice to her case by the failure of the trial court to give strict warranty instructions that she cannot prevail on this point by reason of Civil Rule 61 [11] and the holding

---

6. O.S. Stapley Co. v. Miller, 103 Ariz. 556, 447 P.2d 248, 251 (1968); Rossignol v. Danbury School of Aeronautics, Inc., 154 Conn. 549, 227 A.2d 418, 423 (1967); Dealers Transp. Co., Inc. v. Battery Distrib. Co., 402 S.W.2d 441, 446 (Ky. Ct.App.1966); State Stove Mfg. Co. v. Hodges, Miss., 189 So.2d 113, 118 (1966); Williams v. Ford Motor Co., 411 S.W.2d 443, 448 (Mo.Ct.App.1966); Webb v. Zern, 422 Pa. 424, 220 A.2d 853, 854 (1966); Olney v. Beaman Bottling Co., 220 Tenn. 459, 418 S.W.2d 430, 431 (1967); McKisson v. Sales Affiliates, Inc., Tex., 416 S.W.2d 787, 788–89 (1967); Dippel v. Sciano, 37 Wis. 2d 443, 155 N.W.2d 55, 63 (1967); Heaton v. Ford Motor Co., 248 Or. 467, 435 P.2d 806, 808 (1967); Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E. 2d 182, 187 (1965). In addition to the Missouri district court holding, see Hacker v. Rector, 250 F.Supp. 300 (W.D.Mo. 1966).

7. Schenfeld v. Norton Co., 391 F.2d 420, 425 (10th Cir. 1968); Davis v. Wyeth Laboratories, Inc., 399 F.2d 121, 127 (9th Cir. 1968); Yarrow v. Sterling Drug, Inc., 263 F.Supp. 159, 161 (D. S.D.1967); Greeno v. Clark Equip Co., 237 F.Supp. 427 (N.D.Ind.1965).

8. McCormack v. Hankscraft Co., 278 Minn. 322, 154 N.W.2d 488, 500–501 (1967).

9. AS 45.05.096 (U.C.C. § 2–314).

10. 2 Frumer & Friedman, Products Liability, § 16 (1966); Prosser, Torts, § 97 (3d ed. 1964); Freedman, 'Defect' in the Product: The Necessary Basis for Product Liability in Tort and in Warranty, 33 Tenn.L.Rev. 323 (1966); James, Products Liability, 34 Tex.L.Rev. 192 (1955); Keeton, Products Liability—Some Observations About Allocation of the Risk, 64 Mich.L.Rev. 1329 (1966); Prosser, The Attack Upon the Citadel, 69 Yale L.J. 1099 (1960); Prosser, The Fall of the Citadel, 50 Minn.L.Rev. 791 (1966); Rapson, Products Liability Under Parallel Doctrines: Contracts Between the Uniform Commercial Code and Strict Liability in Tort, 19 Rutgers L. Rev. 692 (1965); Smyser, Products Liability and the American Law Institute: A Petition for Rehearing, 42 U. Detroit L.J. 343 (1965); Traynor, The Ways and Meanings of Defective Products and Strict Liability, 32 Tenn.L.Rev. 363 (1965).

11. Civ.R. 61 states:
No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears

of this court in Zerbinos v. Lewis.[12] It is argued that for years the courts have been instructing on warranty and disallowing all of the usual warranty defenses, as was done in this case; that this amounts to application of the doctrine of strict liability and therefore appellant was not prejudiced.

■ We do not agree. Appellees' interpretation of the present status of the law of warranty is based to a large extent on opinion and fails to give proper weight to basic differences in the two theories such as that liability may be stipulated away by contract but cannot be avoided in tort. Since appellant did not prevail it is not possible to infer that the facts of her case were viewed as favorably by the jury under the warranty instructions as they might have been under strict liability instructions. It would appear that appellant has gone as far as she could to prove prejudice under the facts of the case.

During the course of the trial appellant attempted to introduce into evidence operating manuals for several makes of automobiles which contained warnings against driving with tailgate windows or luggage compartment lids open without at the same time opening cowl fresh air vents and closing the side windows in order to prevent the entry of carbon monoxide gas into the passenger compartment. The court rejected the manuals on the ground that it had not been established that the vehicles described were similar to appellant's station wagon, and on the additional ground that they constituted hearsay. Appellant contends that the trial court erred.

The testimony of Gilbert Robertson, a Chrysler chemist, was that under stationary conditions the same general principles of physics were applicable in all station wagons. With respect to ventilation characteristics (of station wagons), the witness stated that he assumed that they were the same although he had not run tests on all such vehicles.

The witness Rodney Allen, a chemical engineer, testified as follows on voir dire examination:

Q. Now, Mr. Allen, do you have an opinion based upon a reasonable engineering certainty as to whether or not the same principles of air movement through windows and openings with heaters on, are equally applicable to all station wagons?

A. Yes, I do.

Q. And what is that opinion?

A. That they are applicable to all station wagons.

Q. Now do you have an opinion based upon a reasonable engineering certainty as to whether or not the same safety principles regarding—same safety principles regarding the movement of air through openings with the heater on apply equally to all station wagons?

A. Yes.

\* \* \* \* \* \*

Q. And what is that opinion?

A. The probability is that there would be carbon monoxide coming in through the open tailgate window.

When asked whether carbon monoxide could enter the passenger compartment when the tailgate window was lowered an inch and a half the witness Allen answered, "Yes." The witness answered in response to a question posed by counsel for appellee that he had no expert knowledge of the design of the car in question.

The witness Kenneth Davis, proprietor of appellee Fifth Avenue Chrysler Center, Inc., testified as follows:

Q. Do you know in your—within your knowledge, that, ah, it is possible for

to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

12. 394 P.2d 886 (Alaska 1964).

carbon monoxide fumes to enter in through the windows of parked or standing vehicles?

\* \* \* \* \* \*

A. Ah, yes, ah, I—ah, I have heard and read of instances of cars parked in garages or, ah, if that answers, ah. \* \* \*

Q. Are you aware of whether or not any of your employees would have been —were aware of this same possibility?

A. This is that carbon monoxide can seep into an automobile? Yes, I would say that, ah, as everyone is ah,—they're as much aware of it as—as anyone would be.

The Supreme Court of New Mexico was faced with a similar question in Lopez v. Heesen.[13] The question in issue was whether a shotgun safety device was defective. The court affirmed the action of the trial court in admitting the testimony of experts that the design of the safety device in question was safe and was used by various other manufacturers on their guns. The court stated that the conduct of others is proper evidence for a jury to consider in determining whether the tendency of the thing was dangerous, defective or the reverse. The court cited 2 Wigmore on Evidence, section 461, at 489 (3d ed. 1940):

> The conduct of others *evidences* the tendency of the thing in question; and such conduct—e. g. in using chains on a hill, felt shoes in a powder-factory, railings around a machine, or in not using them —is receivable with other evidence showing the tendency of the thing as dangerous, defective, or the reverse. But this is only evidence. The jury may find from other evidence that the thing was in

fact dangerous, defective, or the reverse, and the maintenance was or was not negligence, in spite of the above evidence.

■■ Based on the same reasoning we are of the opinion that the operating manuals should have been admitted in evidence. Although it was not established that the automobiles described in the manuals were identical to appellant's, there was expert testimony that the ventilation characteristics of all station wagons were the same and that it was general knowledge that carbon monoxide fumes could enter through the open windows of parked automobiles. The fact that other manufacturers recognized and warned against what they considered to be a dangerous condition in automobiles of a generally similar design to that of appellant's, when operated under substantially similar conditions, is evidence which should have been submitted to the jury with a cautionary instruction. Evidence of the conduct of other manufacturers under the facts of this case could have enlightened the jurors and assisted them in determining the issue. Such evidence however should be placed in perspective with an instruction that it is only evidence, that it does not establish a fixed standard of conduct and the jury advised that it may find from other evidence that there was no defect or dangerous condition.

■ Appellees argue that the manuals were hearsay and inadmissible as not coming within any recognized exceptions to that rule. The authorities are divided on the question of whether non-assertive conduct of the type exemplified by the publication of the operating manuals is covered by the common law definition of hearsay.[14] No rule or decision of this court

13. 69 N.M. 206, 365 P.2d 448, 453 (1961).

14. Both Morgan, Hearsay and Non-Hearsay, 48 Harv.L.Rev. 1138, 1147 (1935) and the American Law Institute, Model Code of Evidence rule 501 at 224 (1942) champion the view, that the hearsay rule applies to assertive as well as non-assertive conduct. *See also* Morgan, Hearsay Dangers, 62 Harv.L.Rev. 177, 214–18 (1948) and Finman, Implied Assertions as Hearsay, 14 Stan.L.Rev. 682 (1961). 5 J. Wigmore, Evidence, § 1362 at 3 (1940) and C. McCormick, Law of

has touched on the question. In holding that only assertive conduct is hearsay and that the manuals were not hearsay we are governed by that portion of Civil Rule 43(b) which states:

> The admissibility of evidence shall be governed by these rules, or in the absence of rule, by the principles of common law as they may be interpreted by the courts of the state in the light of reason and experience. In the absence of rule, the evidence shall be presented according to the most convenient method prescribed by common law principles, and the principle which favors the reception of the evidence shall govern.

■ Appellant's proposed instruction number 21 would have instructed the jury that the manufacturer in this case had some 16 affirmative duties with respect to carbon monoxide. The lengthy proposed instruction defined each duty only as it related to the plaintiff's benefit. The trial court did not commit error in rejecting the proposed instruction. This court long ago indicated to the trial courts of Alaska that it favored short, clear, and concise standard instructions over the argumentative "pro and con" type instruction. Copies of Illinois Pattern Jury Instructions were distributed to all superior courts immediately after their publication. The civil jury instructions of California have always been available to all Alaska trial courts. The trial judges of Alaska have expressed their approval of the standard type instructions at annual judicial conferences. If proposed instruction number 21 had been given,

slanted as it was toward plaintiff's contentions, it would have been necessary to give an additional instruction framed to present defendants' contentions. This would have been a step backward and the trial court correctly refused to take it.

The case is remanded for further proceedings consistent with the views expressed herein.

RABINOWITZ, Justice (dissenting in part, concurring in part).

Assuming that adoption of the doctrine of strict liability is warranted, and assuming further that the Greenman v. Yuba Power Products, Inc.'s [1] formulation of the doctrine is preferable to that in Restatement (Second) Torts section 402A (1965), I cannot agree with the majority's conclusion that the trial court's failure to instruct on strict liability prejudiced appellant.[2] For in the case at bar the jury was instructed on appellant's alternate theory of liability which was based on breach of warranty.[3]

In this regard the trial court informed the jury that in the factual context in question "there is an implied warranty that the goods shall be merchantable. By this we mean that the goods are at least fit for the ordinary purposes for which such goods are used." The jurors were further instructed that in order for appellant to recover they had to find that "the warranty was breached and that the breach of warranty was the proximate cause of the

---

Evidence, § 229 at 479 (1954) maintain that only assertive conduct may be hearsay.

1. 59 Cal.2d 57, 62, 27 Cal.Rptr. 697, 377 P.2d 897, 900, 13 A.L.R.3d 1049 (1962).

2. Appellant's two proposed instructions pertaining to strict liability read as follows:
   A manufacturer is strictly liable when an article he places on the market

proves to have a defect that causes injury to a human being.
   A retailer is strictly liable when he sells an article which proves to have a defect that causes injury to a human being.

3. Appellant alleged four alternative theories of liability. The trial court instructed the jury on all theories asserted with the exception of strict liability.

## 252

loss sustained."[4] Under the court's instructions concerning breach of warranty, all warranty defenses, including contributory negligence, were withheld from the jury's consideration. In such circumstances I do not believe that appellant has shown how she was prejudiced by the trial court's failure to give her proposed instructions pertaining to strict liability.

There is considerable authority to the effect that "defect" in strict liability terms is co-extensive with that of the implied warranty of fitness for reasonable use.[5] Appellant has not demonstrated that the strict liability "defect" concept, if applied to the case at bar, would have furnished a more expansive base for determination of liability than that afforded by the implied warranty of fitness for reasonable use criteria. Thus, I do not believe that a new trial is warranted on the facts appearing in this record and would hold that the trial court's failure to instruct on the theory of strict liability was harmless error.[6]

On the other hand, although I view the question as an extremely close one, I concur in the majority's view concerning the trial court's refusal to admit the operating manuals. I therefore concur in the granting of a new trial on this ground.

4. An additional facet of the warranty question was presented to the jury in the following instruction:

> One who sells a product which is likely to be dangerous when used for the purpose for which it was made or for a reasonably foreseeable purpose and has reason to believe that those who will use it will not realize the risk has a duty to exercise reasonable care to warn them of the danger involved. Failure to fulfill that duty to warn may make the product unmerchantable and unfit and result in a breach of warranty.

5. Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, 150 (1965); Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305, 313 (1965); Jackson v. Muhlenberg Hosp., 96 N.J.Super. 314, 232 A.2d 879, 884 (1967); Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81, 82–83 (1963); L. Frumer & M. Friedman, Products Liability § 164 (4), at 3–188 (1968).

6. In my view, the court's instruction quoted in n. 4 *supra* adequately covered the issue of lack of warning-unmerchantability. *Compare* Williams v. Brown Mfg. Co., 93 Ill.App.2d 334, 236 N.E. 2d 125, 139 (1968); Prosser, The Fall of the Citadel, 50 Minn.L.Rev. 791, 808 (1966); Restatement (Second) of Torts § 402A, comments (h) (j) (1965); Traynor, The Ways and Meanings of Defective Products and Strict Liability, 32 Tenn.L.Rev. 363, 372–74 (1965).