Joseph A. **PAOLETTO**, Administrator of the Estate of Michael A. Paoletto, Deceased, Appellant,

v.

**BEECH AIRCRAFT CORPORATION**, a Corporation of the State of Delaware.

No. 71–1771.

United States Court of Appeals, Third Circuit.

Submitted June 19, 1972 Under Third Circuit Rule 12(6).

Decided July 24, 1972.

plane crash in Alaska in 1966 raises a choice of law problem, challenges the district court's rulings on several evidentiary matters, and questions the court's instructions to the jury.

On August 15, 1966, appellant's decedent was killed when the plane in which he was a passenger crashed during a thunderstorm near Anchorage, Alaska. The crash was directly caused by the failure of the main spar in the center truss section of the right wing, which resulted in the wing's collapse. The aircraft, a Beech C-18S, was manufactured by appellee in 1945 to the specifications of its original owner, the United States Army Air Corps. At the time of the crash, it was operated by its twelfth and final owner, Shaw Flight Service of Anchorage. Asserting negligence,[1] appellant instituted an action against Shaw, the flight operator, in 1966, which was ultimately settled for $50,000. This action against the manufacturer, alleging negligence and breach of warranty in manufacture, was subsequently commenced in the court below, resulting in a jury verdict for the manufacturer. This appeal followed.

James P. Collins, Frederick D. Duden, Jr., Philadelphia, Pa., for appellant.

E. N. Carpenter, II, R. H. Richards, III, Richards, Layton & Finger, Wilmington, Del., for appellee.

Before ALDISERT, JAMES ROSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal from a wrongful death diversity action emanating from an air-

I

Both parties suggest that a substantial choice-of-law problem is presented by the facts of this case. The action, involving an aircraft manufactured in Kansas which crashed in Alaska, was brought in the district of Delaware, appellee's place of incorporation.[2] The court below, as the parties recognize, was obligated to fashion a choice of law rule in this case consistent with Delaware law. Klaxon v. Stentor Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Boase v. Lee Rubber &

1. The negligence claim appears to have been predicated on Shaw's decision to fly through the thunderstorm, despite weather warnings and apprisal of another craft's emergency landing due to the storm. *Cf.*, Gatenby v. Altoona Aviation Corp., 407 F.2d 443 (3d Cir. 1968), in which this court found a similar decision by a pilot to constitute negligence. See Kaczmarek, Administrator of the Estate of Charles R.

Cook v. Mesta Machine Co., et al., 463 F. 2d 675 (3d Cir. 1972).

2. 28 U.S.C. § 1332(c) provides that for purposes of establishing diversity of citizenship, "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . ."

Tire Corp., 437 F.2d 527, 529 (3d Cir. 1970). That law was well expressed in Friday v. Smoot, 211 A.2d 594, 595 (Del.1965): Delaware holds "that the substantive rights of the parties in a tort action are governed by the law of the place where the tort arose, while procedure is governed by the law of the place where the action is brought." It is at this familiar expression of the substance-procedure dichotomy [3] that the parties chart different courses.

Appellant suggests that because standard of care has been deemed substantive under Delaware law, Clayton v. Bartoszewski, 198 A.2d 692 (Del.1964), the traditional *lex loci delicti* rule mandates that Alaskan law should govern the disposition of this case. Thus, appellant argues, because Alaska has adopted the strict liability rule for manufacturers of defective products, Clary v. Fifth Avenue Chrysler Center, Inc., 454 P.2d 244 (Alaska 1969), admission of extensive exculpatory evidence tending to show an absence of negligence in the design and manufacture of the aircraft was reversible error.

■ Appellee contends, however, that "where the tort arose" refers not to where the injury occurred, but to where the negligence took place. This distinction, appellee asserts, was tacitly recognized by the Delaware courts in Folk v. York-Shipley, Inc., 239 A.2d 236 (Del. Super.1968).[4] See also, Ehrenzweig, "Product Liability in the Conflict of Laws—Toward a Theory of Enterprise Liability Under 'Foreseeable and Insurable Laws,'" 69 Yale L.J. 794, 801 (1960). Thus, appellee argues that Kansas law must establish the standard of care to which an aircraft manufacturer in 1945 should have adhered in designing and constructing his product. That Alaska was the situs of the injury was merely fortuitous; the defective manufacture, if it occurred at all, took place in Kansas.

■ Appellee's argument grounded in the interest-analysis approach to conflict of laws,[5] suggesting that Kansas has a more rational connection with the facts of this case and, hence, greater contacts and concern with the resolution of this dispute, does not obviate the clear mandate of Friday v. Smoot, *supra*: Delaware has not yet opted to join the growing list of jurisdictions which have adopted the grouping-of-contacts conflict-of-laws rule.[6] Consequently, appellee's suggestion that, in Delaware, *lex loci delicti* permits reference to the law of the place of the negligence rather than to the law of the place of the injury must be rejected.[7] Quant v. Beech Aircraft Corp., 317 F.Supp. 1009, 1013 (D.Del.1971); see also, Handy v. Uni-

3. See Restatement 2d, Conflict of Laws, § 122 (Proposed Official Draft, Part III (1967)); Frumer & Friedman, Products Liability § 37.02.

4. We are not precluded from giving "proper regard" to the holdings of the lower courts of the forum state in fashioning a conflict-of-laws rule, although, unlike the holdings of the state's highest court, they are not necessarily dispositive of the question. See Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1966); Boase v. Lee Rubber, *supra*, 437 F.2d at 530.

5. See, Weintraub, Commentary on the Conflict of Laws, 226 (1971); Seidelson, "Interest Analysis and an Enhanced Degree of Specificity: The Wrongful Death Action," 10 Duquesne L.Rev. 525 (1972).

6. At least 21 states and the District of Columbia have rejected the *lex loci delicti* rule in favor of some form of interest-analysis approach to conflicts problems. Weintraub, *supra*, at 324; Seidelson, *supra*, at 525, n. 2. See Annotation, "Modern Status of Rule that Substantive Rights of Parties to a Tort Action Are Governed by the Law of the Place of the Wrong," 29 A:L.R.3d 603.

7. Indeed, such a construction of the *lex loci delicti* rule has been consistently rejected by other courts. Patch v. Stanley Works, 448 F.2d 483, 487–492 (2d Cir. 1971); Uppgren v. Executive Aviation Services, 326 F.Supp. 709, 712 (D.Md. 1971); Manos v. Trans World Airlines, 295 F.Supp. 1170, 1173 (N.D.Ill.1969); 3 Fruman & Friedman, *supra*, note 3, § 37.03 [1]. The original Restatement of the Law, Conflict of Laws, §§ 377 and

royal, Inc., 327 F.Supp. 596, 599 (D.Del. 1971); Pack v. Beech Aircraft Corp., 132 A.2d 54, 56 (Del.Super.1957).

■ The choice-of-law problem takes on an added dimension in a products liability case, however. Although on this appeal appellant has exclusively characterized his claim as "strict liability in tort," the complaint below alleged both negligence and breach of warranty.[8] In Delaware, the conflict-of-laws rule differs in warranty actions, which are deemed contract,[9] from that employed to resolve multi-jurisdictional tort claims. Indeed, in Quant v. Beech Aircraft

Corp., *supra*, an action arising from an air crash in Italy brought against the present appellee, the complaint alleged both breach of warranty and negligence. In considering a transfer of the case to the district of Kansas,[10] the Delaware court found that Kansas law controlled the contract-warranty action, and that *lex loci delicti* required that Italian law govern the tort-negligence claim. *Quant, supra,* 317 F.Supp. at 1012–1013.[11]

Although we are inclined to agree with the commentators [12] that a products liability case—particularly where, as here, the action is brought by a third

378, applies *lex loci delicti* and defines the "place of the wrong" as "the state where the last event necessary to make an actor liable for an alleged tort takes place."

8. The complaint states:
7. The aforementioned crash and resulting death of decedent was caused by the negligence, carelessness and recklessness of the defendant, acting through its servants, agents and/or employees, who at all times material hereto were engaged in the course and scope of their employment with defendant.
8. In connection with the sale of the said aircraft as set forth hereinabove, defendant, its agents, servants and/or employees, did warrant the said aircraft to be merchantable, fit for the purpose for which it was intended, safe, and free of defects.
9. The defendant breached the warranties aforesaid in that the said aircraft was not merchantable, was not fit for the purpose for which it was intended, was unsafe, and not free of defects, as a result of which the aforesaid crash and resulting death of decedent occurred.
10. The accident aforementioned was caused solely and exclusively by reason of the negligence of the defendant, its agents, servants and/or employees as aforesaid, and/or its breach of warranties as is set forth more particularly hereinabove, and was due in no manner to any act or failure to act on the part of plaintiff's decedent.

9. See Prashker v. Beech Aircraft Corp., 258 F.2d 602, 607 (3d Cir. 1958), cert. denied, 358 U.S. 910, 79 S.Ct. 236, 3 L.Ed.2d 230 (1958); Hood v. McConemy, 53 F.R.D. 435, 443 (D.Del.1971), note 10; Handy v. Uniroyal, *supra*, 327 F.Supp.

at 598; Quant v. Beech Aircraft, *supra*, 317 F.Supp. at 1012.

10. Pursuant to the federal *forum non conveniens* venue transfer statute, 28 U.S.C. § 1404(a). Following change of venue, the Kansas district court would be obligated to apply the same law that would have been applied had the Delaware district court disposed of the case on the merits. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

11. In George v. Douglas Aircraft Corp., 332 F.2d 73 (2d Cir. 1964), the Second Circuit held that an action based on warranty brought by the Texas-domiciled victims of a Florida air crash against the airframe manufacturer, a Delaware corporation, which built and sold the aircraft in California, was governed by the law of the place of the injury. In predicting that a New York court would so hold, Judge Friendly stated: "The interest protected by the imposition of strict liability on a manufacturer is, as Dean Pound pointed out, the interest in maintaining 'the general security.' . . . An accident caused by a defective product threatens the 'general security' of the state where the injury occurs rather than of the state of delivery, which is often determined by tax or other considerations wholly extraneous to the instant problem, or even of the state of manufacture." 332 F.2d at 76–77. *Cf.*, 78 Harv.L.Rev. 881 (Feb.1965); Dean Prosser has suggested that the implied warranty cause of action is in essence strict tort liability, and should be denominated and disposed of as such. Prosser, "The Fall of the Citadel (Strict Liability to the Consumer)," 50 Minn.L.Rev. 791, 802 (1966).

12. Prosser, *supra*, note 11; Fruman & Friedman, *supra*, §§ 37.03–38A.

party against a manufacturer—has its basis in tort rather than contract, which would refer us to Alaskan law, we perceive no critical difference in the substantive law of Kansas from that of Alaska regarding the standard of care by which appellee's conduct in this case must be measured. Thus, we find resolution of this choice of law problem unnecessary.

■■ The Alaskan courts first applied the strict liability in tort doctrine in Clary v. Fifth Avenue Chrysler Center Inc., *supra*. There the court expressly adopted the California rule announced in Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 377 P.2d 897, 900, 27 Cal.Rptr. 697, 700 (Cal. 1962): "A manufacturer is strictly liable in tort when an article he places on the market, *knowing that it is to be used without inspection for defects,* proves to have a defect that causes injury to a human being." (Emphasis supplied.) [13] Because there is so little case law yet developed from the Alaskan courts applying the doctrine, it remains uncertain if Alaskan strict liability would obtain here, where the aircraft was inspected, altered, and maintained for 21 years subsequent to its manufacture. In any event, the trial court submitted the case to the jury with an instruction which fully comported with the Alaskan strict liability doctrine:

The defendant, Beech Aircraft Corporation . . . is liable to the plaintiff for any injury suffered by him if the plaintiff establishes by a preponderance of the evidence that:

First, the aircraft was defective in manufacture at the time it was placed on the market and delivered in 1945 or as modified in 1950; that is to say, the alleged defect existed immediately after the manufacture or modification; and second, the claimed defect was a proximate cause of any such injury to the plaintiff occurring while

the aircraft was being used in the way and for the general purpose for which it was designed and intended.

If you find that the defendant placed the airplane on the market in 1945 with a defect, or if you find that a defect existed in the gusset welds made in connection with the addition of the drag leg in 1950, and if you find that one or the other of such defect was a proximate cause of the accident, you must find for the plaintiff, regardless whether the defendant knew of the defect and regardless whether the defect was caused by any negligence on the part of the defendant.

This instruction also fully comports with Kansas product liability law. Garst v. General Motors Corp., 207 Kan. 2, 484 P.2d 47 (1971); Vrooman v. Beech Aircraft Corp., 183 F.2d 479 (10th Cir. 1950); see also, Blim v. Newbury Industries, 443 F.2d 1126 (10th Cir.1971).

■ Moreover, we find nothing in the decisions of the Alaskan courts to support appellant's argument that admission of the spate of evidence regarding the standards to which the aircraft had been manufactured and inspected during its 21-year lifespan constituted reversible error. Indeed, in Clary, *supra*, the court ruled that operating manuals of other manufacturers were admissible to establish standards by which the existence of a defect should be measured. The court in Bachner v. Pearson, *supra*, 479 P.2d at 329, does hold that "[l]iability is attached, as a matter of policy, on the basis of the existence of a defect rather than on the basis of the defendant's negligent conduct." But to ground a challenge to the evidence on such language is to misconceive the basis of its admissibility. The evidence was relevant to the existence *vel non* of a defect: appellant was obligated to establish that the defect existed, and that it caused the crash, Clary, *supra*; the manufacturer,

13. In *Clary*, the Alaska Supreme Court declined to adopt the more expansive approach taken in Restatement 2d, Torts, § 402A. In Bachner v. Pearson, 479 P.2d 319 (Alaska, 1970), it took a broader view of strict liability, extending the doctrine to apply to leases.

therefore, was permitted to contest the existence of the defect by showing both the diminished likelihood of defect at the time of manufacture, in view of the rigid standards under which the plane was constructed, and that 21 years of inspections failed to disclose any defect whatsoever.[14] We hold that this evidence was admissible to rebut evidence that a defect existed.[15] Moreover, the evidence was obviously relevant to the question of negligence, on which appellant also sought to predicate liability.[16]

In any event, admission of the evidence was undoubtedly harmless, in view of the court's clear instruction that liability for defect attached "regardless whether the defendant knew of the defect and regardless whether the defect was caused by any negligence on the part of the defendant."

We hold, therefore, that the choice of law problem broached by the parties is in reality a false conflict, and that appellant's cause in this appeal cannot be sustained under the laws of either state.

## II

■ Appellant's contention that it was error to admit the release executed to Shaw Flight Service, which evidenced the $50,000 settlement of appellant's negligence claim against Shaw, must also be rejected. Appellant stipulated at pretrial as to the facts relating to the settlement, and even read the stipulation to the jury. His objection to the release complements his claim that the trial court adopted a measure of damages which did not conform to Alaskan law, which, it is contended, does not permit reduction to net worth, Leavitt v. Gillispie, 443 P.2d 61 (Alaska 1968). Each of these arguments fails, however, because the jury expressly found against appellant on the issue of liability; because the issue of damages was never reached, any error which may have existed was harmless.

■ Appellant argues that its motion for summary judgment was improperly denied. But as the trial court cogently charged, "[a] defect existing at the time of manufacture or modification is not presumed but must be proved by the plaintiff by its preponderance of the evidence. The fact alone that an accident occurred or that the decedent was killed does not raise a presumption of a defect. Any such defect must be established . . . by a preponderance of the evidence, and if it is not so established, [the jury] should find for the defendant." Here, there was ample evidence to support the jury's verdict.[17] A fortiori, the motion for summary judgment was properly denied.

---

14. Appellant's own witness, William Holshauser, testified that in April of 1966, an x-ray taken of the slide tube cluster, which allegedly collapsed due to excessive stress, revealed no defects. Appellant's witness Sander confirmed that x-ray was the best nondestructive method to detect defects.

15. Admission of such extrinsic evidence in products liability cases has received the imprimatur of the Kansas courts as well. Garst v. General Motors Corp., *supra*, 484 P.2d at 61.

16. [W]hen an evidentiary fact is offered for one purpose, and becomes admissible by satisfying all the rules applicable to it in that capacity, it is not inadmissible because it does not satisfy the rules applicable to it in some other capacity and because the jury might improperly consider it in the latter capacity.
1 Wigmore on Evidence, § 12, at 300.

17. Appellee presented three expert witnesses. Witness Eaton testified that he saw no defects in the welds which contributed to the crash, and that no weld failed on the aircraft. Witness Lippett, a metallurgical engineer with 30 years' experience with aircraft, testified that he found no incomplete penetration, unfused bond zones or porosity that would have weakened the weld, or had any effect on the strength of the structure. He, too, found no weld failures. Witness Taussig, also a metallurgical engineer, found no failures in any of the welds. Examining the parts with a scanning electron microscope, he found no defects or imperfections in the weld which contributed in any way to the failure of the aircraft.

There was extrinsic testimony, moreover, which supported appellee's theory that the crash did not result from any defect in the aircraft: The plane was 21 years old, had been owned by 12 sep-

We must also reject appellant's contention that, because the jury's deliberations lasted only 40 minutes after a long and complex trial, the resultant verdict was capricious. We have recently said that a "court should not permit a jury verdict to stand where there has been a 'showing that the jury was biased or acted capriciously or unreasonably.' Derewecki v. Pennsylvania R. Co., 353 F.2d 436, 444 (3d Cir.1965)." Nelson v. Keefer, 451 F.2d 289, 295 (3d Cir.1971). But the brevity with which a jury reaches its verdict does not, standing alone, substantiate a claim of capriciousness, even where the total time of deliberation is substantially less than the jury required in this case. See, e. g., Marx v. Hartford Acc. & Indemn. Co., 321 F.2d 70 (5th Cir.1963); Segars v. Atlantic Coastline R. Co., 286 F.2d 767 (4th Cir.1961).

Finally, appellant has raised several allegations of error in the court's charge. We have examined these carefully, and find them to be wholly without substance.

The judgment of the district court will be affirmed.

arate owners, and had evidenced no defects sixteen months prior to the accident under x-ray analysis. Authorization had been granted to overload the craft in excess of its design capability; finally, there was substantial evidence of the likely causal connection between the turbulent thunderstorm and the crash.