**Dan SMITH, Plaintiff,**

v.

**INGERSOLL–RAND COMPANY,
Defendant.**

No. S–8827.

Supreme Court of Alaska.

Dec. 29, 2000.

Michael W. Flanigan, Walther & Flanigan, Anchorage, for Plaintiff.

James C. Nielsen, Wright, Robinson, Osthimer & Tatum, San Francisco, CA, Clay A. Young, Delaney, Wiles, Hayes, Gerety & Young, Anchorage, for Defendant.

Before MATTHEWS, Chief Justice, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Chief Justice.

I. *INTRODUCTION*

Dan Smith suffered permanent injuries after an air compressor door fell on his head. He brought a strict products liability lawsuit in federal district court against Ingersoll Rand Company, the manufacturer of the air compressor. Following three jury trials and a remand from the Ninth Circuit, the United States District Court for the District of Alaska, Singleton, J., certified the following questions to this court:

(1) Did the 1986 Tort Reform Act change the existing law on comparative fault in products liability cases such that a plaintiff's failure to exercise ordinary care is now sufficient to raise a jury question on comparative fault?

(2) If not, can a worker's failure to wear an available hard-hat, which would have eliminated or greatly reduced the worker's damages from a head-injury caused by the defective product, constitute comparative fault such that the worker's damages are diminished proportionally?

(3) If not, can a worker's propping a door open on a defective product in a manner the worker knows to be unsafe constitute comparative fault such that the worker's damages are diminished proportionally?

Because the 1986 Tort Reform Act modified the definition of comparative fault in strict liability cases to include ordinary negligence, we answer the first question in the affirmative. The other two questions therefore become moot.

## II. FACTS AND PROCEEDINGS

### A. Facts

On August 12, 1987, Dan Smith was injured at Prudhoe Bay while attempting to start the diesel engine of an Ingersoll Rand portable air compressor. Smith, a light duty mechanic, was not wearing a hard hat when he was dispatched by his supervisor to start the air compressor's engine.

The air compressor was an older model that required the mechanic to open its door in order to start the engine. There was no latch on the door to hold it open. Instead, the mechanic had to prop the door open in one of three ways: (1) the fully-open position; (2) the up-and-folded position; or (3) the wedged position. The first two positions safely hold the door in place; the third position is unsafe.

The exact details of Smith's accident are unknown. Smith does not remember how he propped the door open.[1] All that he remembers is that he opened the door, started the engine, and the "next thing [he] knew, [he] was picking the door[ ] up off the top of [his] head." Somehow—whether from wind, vibration, or improper placement—the door had fallen from its open position and hit Smith's head. Initially, despite some blood and swelling, Smith did not think that he was seriously injured.

However, eleven days after the accident, Smith suffered a generalized motor seizure. He had no history of seizures in his adult life. On the medevac plane out of Prudhoe Bay, he suffered another seizure. He was later diagnosed with traumatic epilepsy, presumably caused by the compressor door hitting his head.

Since the accident, Smith has continued to suffer from repeated seizures, fatigue, difficulty concentrating, lapses in memory, and other related medical problems. He lost his job because of these medical problems and remains unemployed.

### B. Proceedings

In 1988, Smith filed a products liability suit against Ingersoll–Rand in state court, alleging that the company had designed a defective product. Smith claimed that the compressor was defective because it did not include a latch to hold its doors open and because there was no warning in the manual or on the compressor regarding the risk of falling doors.

Ingersoll–Rand removed the case to federal district court based on diversity jurisdiction. The case was then tried three different times. A fourth trial is currently pending.

The first trial ended in a hung jury. The second trial was bifurcated into a liability phase and a damages phase. The second jury was instructed on Smith's comparative negligence using an ordinary negligence standard.[2] Smith argued that his own ordinary comparative negligence was irrelevant in a products liability suit. However, Ingersoll Rand argued to the jury that Smith's failure to wear a hard hat and his propping the door open in an unsafe manner constituted ordinary comparative negligence sufficient to reduce his recovery.

The second trial resulted in a partially hung jury. The jury found that the air compressor was defective but was unable to reach a decision on legal causation or comparative negligence.[3] Because, in the trial court's view, the jury had been unable to agree on comparative fault by Smith, the

---

1. Smith claims, however, that he is sure that he did not prop the door open in the wedged position. At trial, his expert witness testified that if the door had been in the wedged position, it would have been resting directly on Smith's head and could not have fallen on his head or caused him injury.

2. Final Instruction No. 4 stated as follows:

    In order to find that plaintiff was comparatively negligent, you must decide that it is more likely true than not true:
    1. that the plaintiff was negligent, and
    2. that the negligence was a legal cause of plaintiff's harm.

    I will now define negligence for you. Negligence is the failure to use reasonable care....
    In this case, you must decide whether the plaintiff used reasonable care under the circumstances.

3. The special verdict form included the following questions and jury responses:

    1. Did the door of the Ingersoll Rand DR–365 Portable Air Compressor fall and hit Dan Smith on the head on August 12, 1987? Answer: Yes
    2. Was the portable compressor manufactured by the Defendant defective when it left

court directed a verdict in Smith's favor on the cause in fact issue, but reserved the legal causation question for retrial.

The third trial focused on damages issues, as well as comparative negligence. Once again, the district court instructed the jury on comparative negligence using an ordinary negligence standard over Smith's objections. The jury found Smith forty percent responsible for the accident and Ingersoll Rand sixty percent responsible. The jury assessed Smith's total damages at $668,000.

Both parties appealed to the Ninth Circuit. Ingersoll Rand argued that the issue of legal causation should have gone to the jury. Smith argued that Alaska law does not permit ordinary negligence to constitute comparative negligence in products liability cases.

The Ninth Circuit only addressed Ingersoll Rand's arguments, holding that the district court erred in granting a judgment notwithstanding the verdict on legal causation and remanding the case for a trial on legal causation.[4] The circuit court did not decide the other issues on appeal.[5] It noted, however, that the question of whether ordinary negligence could constitute comparative negligence in a products liability case presented a "novel issue of Alaska law," particularly in light of the 1986 Tort Reform Act.[6] The circuit court therefore recommended that the district court consider certifying this question to the Alaska Supreme Court.[7]

On remand, the federal district court certified three questions to this court as described in the introduction. We accepted certification pursuant to Alaska Appellate Rule 407.[8]

## III. STANDARD OF REVIEW

■ A decision by this court upon certification from another court involves determinative questions of Alaska law for which there is no controlling precedent.[9] In determining questions of law, we exercise our independent judgment and adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[10]

■ In interpreting a statute's effect on prior case law, this court's "primary guide is the language used, construed in light of the purpose of the enactment."[11] This court applies a "sliding scale approach" in statutory interpretation.[12] "Under the sliding scale approach, the plainer the language of the statute, the more convincing contrary legislative history must be."[13]

## IV. DISCUSSION

A. *Prior to the 1986 Tort Reform Act, Alaska Allowed Comparative Negligence as a Defense in Products Liability Actions Only Under Limited Circumstances.*

In 1975 this court judicially adopted the doctrine of comparative negligence for fault-

---

the possession of the Defendant? Answer: Yes.
  3. Was the defective condition of the portable compressor manufactured by the Defendant a legal cause of the Plaintiff's harm ... ? Answer: (None given)

**4.** *See Smith v. Ingersoll–Rand Co.,* 139 F.3d 908, *2, 1998 WL 80630 (9th Cir.1998).

**5.** *See id.* at *2–*3.

**6.** *See id.* at *3.

**7.** *See id.* at *4.

**8.** Appellate Rule 407(a) states:
  The supreme court may answer questions of law certified to it by the Supreme Court of the United States, a court of appeals of the United States, [or] a United States district court ... when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be deter-

minative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

**9.** *See supra* note 8.

**10.** *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**11.** *Alaska Hous. Fin. Corp. v. Salvucci,* 950 P.2d 1116, 1121 (Alaska 1997) (quoting *Commercial Fisheries Entry Comm'n v. Apokedak,* 680 P.2d 486, 489–90 (Alaska 1984)).

**12.** *See Salvucci,* 950 P.2d at 1121 (quoting *Peninsula Mktg. Ass'n v. State,* 817 P.2d 917, 922 (Alaska 1991)).

**13.** *Marlow v. Municipality of Anchorage,* 889 P.2d 599, 602 (Alaska 1995) (citations omitted).

based tort actions and abolished the older, harsher doctrine of contributory negligence, which completely barred a plaintiff's recovery if he was to some degree at fault for his injuries.[14] Under the "pure" system of comparative fault adopted by the court, a plaintiff would still be able to recover if he was comparatively at fault for his injuries, but his recovery would be reduced in proportion to his percentage of fault.[15]

Less than a year later, in *Butaud v. Suburban Marine & Sporting Goods, Inc.*, we held that comparative negligence principles also apply to products liability actions based on strict liability.[16] But we held that comparative negligence in strict products liability cases was limited to two specific situations: (1) when the plaintiff knows that the product is defective and unreasonably and voluntarily proceeds to use it; and (2) when the plaintiff misuses the product and the misuse is a proximate cause of the injuries.[17]

Later cases have confirmed that comparative negligence in strict products liability is limited to product misuse and unreasonable assumption of risk.[18] Ordinary negligence is generally not sufficient to establish comparative negligence on the part of a products liability plaintiff.[19]

Recently, in *General Motors Corp. v. Farnsworth* we had the opportunity to further clarify our case law on this issue.[20] We noted that litigants sometimes misread *Dura Corp. v. Harned*[21] as holding that product misuse is not sufficient to raise a jury question on comparative negligence in a strict products liability action.[22] We pointed out that, like our other case law, *Dura* recognizes two types of comparative negligence in strict liability cases: (1) knowing product misuse where the misuse is a proximate cause of the injuries and (2) unreasonable and voluntary assumption of risk with respect to a defective product.[23] The *Dura* court limited its discussion to the latter type of comparative negligence because the defendant in the case did not allege product misuse.[24]

*Farnsworth* clarified our pre 1986 case law but it did not address the question currently before us, namely, whether the 1986 Tort Reform Act changed the definition of comparative negligence in strict products liability cases to include ordinary negligence. Although the events in *Farnsworth* took place after the passage of the 1986 Tort Reform Act, the opinion did not discuss the effects of that Act, nor did it need to.[25] Even if the Act expanded comparative negligence in products liability to include ordinary negligence, such an expansion would have been irrelevant in *Farnsworth*. The defendants in *Farnsworth* never alleged ordinary comparative negligence on the part of the plaintiff; instead they alleged product misuse—the de-

**14.** *See Kaatz v. State*, 540 P.2d 1037, 1049 (Alaska 1975); *see also* AS 09.17.080 (adopting comparative negligence legislatively).

**15.** *See Kaatz*, 540 P.2d at 1049.

**16.** 555 P.2d 42, 46 (Alaska 1976).

**17.** *See id.* at 46.

**18.** *See, e.g., Dura Corp. v. Harned*, 703 P.2d 396, 403 (Alaska 1985) (recognizing two types of comparative negligence in products liability cases and discussing product misuse as comparative negligence); *Caterpillar Tractor Co. v. Beck*, 593 P.2d 871, 890–92 (Alaska 1979) (recognizing product misuse and unreasonable and voluntary assumption of risk as the two types of comparative negligence available in products liability cases).

**19.** *See Dura*, 703 P.2d at 405 n. 5 ("Plaintiff's failure to exercise ordinary care is not sufficient to raise a jury question on the issue of comparative negligence in a products liability case based on strict liability in tort.") (disapproving of *Sturm, Ruger & Co. v. Day*, 594 P.2d 38 (Alaska 1979), a case that suggested that ordinary negligence-such as dropping a gun-could be considered comparative fault in products liability actions); *see also General Motors v. Farnsworth*, 965 P.2d 1209, 1215 n. 6 (Alaska 1998) (recognizing that *Dura* overruled *Sturm* ).

**20.** 965 P.2d 1209 (1998).

**21.** 703 P.2d 396 (Alaska 1985).

**22.** *See Farnsworth*, 965 P.2d at 1215 n. 6.

**23.** *See id.* at 1215.

**24.** *See id.*

**25.** *See id.* at 1211 (events took place in 1989); *cf. Ogle v. Craig Taylor Equip. Co.*, 761 P.2d 722, 725 (Alaska 1988) (holding that 1986 Tort Reform Act applies only when plaintiff's injury occurred on or after June 11, 1986).

fense was that plaintiff wore a seatbelt under her arm rather than across her body.[26]

### B. The 1986 Tort Reform Act Modified the Definition of Comparative Negligence in Products Liability Actions to Include Ordinary Negligence.

In 1986 the Alaska Legislature passed the Tort Reform Act. Modeled after the Uniform Comparative Fault Act, the Tort Reform Act was intended to "to create a more equitable distribution of the cost and risk of injury and increase the availability and affordability of insurance."[27] The legislature hoped to reduce the costs of the tort system while still ensuring "that adequate and appropriate compensation for persons injured through the fault of others" remained available.[28]

As part of the Act, the legislature enacted a rule of comparative fault similar to the doctrine of comparative negligence which this court had adopted a decade earlier:

> In an action based on fault seeking to recover damages for injury or death to a person or harm to property, contributory fault chargeable to the claimant diminishes proportionally the amount awarded as compensatory damages for the injury attributable to the claimant's contributory fault, but does not bar recovery.[29]

The Act defined "fault" as

> acts or omissions that are in any measure negligent, reckless, or intentional toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of product for which the defendant otherwise would be

liable, and unreasonable failure to avoid injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.[30]

The question before us is whether these two provisions modified the existing case law on comparative negligence in products liability cases. We conclude that they did.

The Act clearly applies to strict products liability cases. The Act applies to tort actions "based on fault."[31] Fault is defined to include, counter-intuitively, "acts or omissions ... that subject a person to strict liability."[32] Products liability cases in Alaska are typically based on a strict liability theory.[33] Thus the Act applies to strict products liability actions.

The Act's definition of comparative fault is broader than the comparative fault recognized in pre–1986 strict products liability cases. Our pre–1986 products liability cases limit comparative fault to instances of product misuse and unreasonable assumption of risk.[34] But, in addition to "misuse of product" and "unreasonable assumption" of risk, the Act also defines "fault" as including "acts or omissions that are in any measure negligent [or] reckless...."[35] Thus, the Act modifies the pre–1986 products liability case law by expanding the type of conduct that will trigger a proportional reduction of damages to include ordinary negligence—"acts or omissions that are in any measure negligent."

The Act's modification of comparative negligence in strict products liability cases reflects a general trend occurring across the

**26.** *See id.* at 1213.

**27.** *See* Senate Findings and Purpose, (C.S.S.B.) 377, 14th Leg., 2nd Sess. (1986) (available in Conference Committee files).

**28.** *Id.*

**29.** AS 09.17.060.

**30.** AS 09.17.900.

**31.** AS 09.17.060.

**32.** AS 09.17.900.

**33.** *See Clary v. Fifth Ave. Chrysler Center, Inc.,* 454 P.2d 244, 248 (Alaska 1969). Products liability cases may also be based on negligence or breach of warranty. *Id.* These theories are also encompassed by the definition of fault in AS 09.17.900.

**34.** *See, e.g., Butaud v. Suburban Marine & Sporting Goods, Inc.,* 555 P.2d 42, 46 (Alaska 1976).

**35.** AS 09.17.900.

nation.[36] The recently published Third Restatement of Torts, Products Liability, observes that a "strong majority" of courts now apply comparative negligence principles in strict products liability cases.[37] Moreover, most of these courts do not limit comparative negligence to instances of product misuse or unreasonable and voluntary assumption of risk. Instead, they allow a plaintiff's ordinary negligence to constitute comparative fault.

In addition, legislatures in other states have enacted tort reform statutes similar to the one here, incorporating a universal definition of "contributory fault" for all tort cases, including strict products liability cases.[38] Courts in other jurisdictions have generally interpreted these statutes as incorporating an ordinary negligence framework into the comparative fault analysis in strict liability cases.[39]

Smith argues that the Alaska Legislature did not intend the Act to modify the existing products liability case law on comparative negligence. But Smith's only support for this argument is the difference between the definition of contributory fault contained in the Uniform Comparative Fault Act-the model for Alaska's tort reform—and the definition actually adopted by the Alaska Legislature.

The Uniform Comparative Fault Act defines contributory fault as follows:

In an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery. This rule applies whether or not under prior law the claimant's contributory fault constituted a defense or was disregarded under applicable legal doctrines, such as last clear chance.[40]

The Alaska Legislature adopted this definition verbatim into the 1986 Tort Reform Act with the exception of the last sentence which it omitted.[41] Smith argues that this omission is significant because it indicates the legislature's desire *not* to change the prior existing law, including the prior existing law on comparative negligence in products liability cases.

This argument has some plausibility. But we think a more likely explanation of why the legislature omitted this particular sentence is that it was simply not relevant when the Tort Reform Act was enacted. In 1986 an Alaska claimant's contributory fault was not a "defense" in the sense meant by this sentence, nor was "last clear chance" a basis for disregarding contributory fault.[42] The Uniform

36. *See Daly v. General Motors Corp.*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162, 1170 (1978) (noting that more than 30 states have extended comparative negligence principles to strict products liability). Most legal commentators view this trend with favor. *See, e.g.,* William Keeton, et al., *Prosser and Keeton on the Law of Torts* § 102, at 712 (5th ed.1984) (declaring the comparative fault system to be the fairest way to allocate costs of accidents in products liability cases).

37. *See* Restatement (Third) of Torts: Products Liability § 17 cmt. a; *see also* Romualdo P. Eclavea, *Applicability of Comparative Negligence Doctrine to Actions Based on Strict Liability in Tort*, 9 A.L.R.4th 633 (1988 & Supp.1999) (listing jurisdictions that have adopted comparative negligence in products liability cases).

38. *See, e.g., Huffman v. Caterpillar Tractor Co.*, 908 F.2d 1470, 1475–77 (10th Cir.1990) (Colorado tort reform statute); *Reed v. Chrysler Corp.*, 494 N.W.2d 224, 230 (Iowa 1993) (Iowa tort reform statute); *Mulherin v. Ingersoll Rand Co.*, 628 P.2d 1301, 1303 (Utah 1981) (Utah tort re-

form statute); *Webb v. Navistar Int'l Transp. Corp.*, 166 Vt. 119, 692 A.2d 343, 359 (1996) (judicially created); *Lundberg v. All Pure Chem. Co.*, 55 Wash.App. 181, 777 P.2d 15, 17–19 (1989) (Washington tort reform statute).

39. *See Huffman*, 908 F.2d at 1477 (holding that Colorado's legislature did not intend to restrict the definition of "comparative fault" in tort reform statute to assumption or risk and/or product misuse); *Lundberg*, 777 P.2d at 19 (interpreting comparative "fault" as lack of exercise of due care and stating "there is currently no reason to distinguish between negligence and strict liability actions for purposes of instructing a jury on the plaintiff's comparative fault").

40. Unif. Comp. Fault Act § 1.

41. *See* AS 09.17.060.

42. *See Kaatz*, 540 P.2d at 1049 (abolishing traditional contributory negligence in negligence tort actions and adopting a pure system of compara-

Comparative Fault Act was written to apply to all of the states of the United States. As of 1977, when the Uniform Act was proposed, only nine states had adopted the pure form of comparative fault proposed in the model act.[43] But Alaska was one of the nine. The sentence in question would serve no purpose here and it seems likely that this is why the legislature did not adopt it.

## V. CONCLUSION

The United States District Court for the District of Alaska certified three questions to this court regarding the effect of the 1986 Tort Reform Act on the prior comparative negligence case law in strict products liability actions.

We conclude that the Act changed the law. Prior to the Act, comparative negli-

gence in products liability cases was limited to product misuse and unreasonable assumption of risk. The Act expands that definition to include other types of comparative fault, including a plaintiff's ordinary negligence.

We therefore answer the first certified question in the affirmative. The other two questions thus become moot.

EASTAUGH, Justice, not participating.

---

tive fault); *Martin v. Union Prods., Inc.*, 543 P.2d 400, 404–06 (Alaska 1975) (abolishing the "last clear chance" doctrine in Alaska tort law because it is no longer relevant in the comparative fault system).

**43.** 12 ULA Uniform Comparative Fault Act, prefatory note, page 124 (1996).