In re ASPEN HOMES, INC., Debtor.

Dan O'ROURKE, Trustee Plaintiff,

v.

VALLEY BEST–WAY BUILDING SUPPLY, INC., a Washington corporation, and Sterling Savings Association, et al, Defendants.

Bankruptcy No. 84–00060–114.
A84–0322–114.

United States Bankruptcy Court, E.D. Washington.

Nov. 4, 1985.

Gregory J. Jalbert, Spokane, Wash., for plaintiff.

Michael Currin, Sterling Savings, Herbert Landis, Valley Best-Way, Spokane, Wash., for defendants.

## MEMORANDUM OPINION

JOHN M. KLOBUCHER, Bankruptcy Judge.

This case involves a question of state law which would ordinarily be left to the state courts for interpretation. However, the interpretation of a Washington State construction lien statute has arisen in this case because a general contractor has filed a petition in bankruptcy and the trustee is holding the proceeds from the sale of a home on which conflicting liens are claimed. Upon the trustee's Notice of Intent to Distribute Proceeds to the construction lender, the trustee received an objection from a supplier, which was claiming a priority lien on the funds. Due to the lack of case law on this subject, this Court felt compelled to interpret this statute.

## THE FACTUAL BACKGROUND

Aspen Homes, Inc. was a general contractor engaged in residential construction. Sterling Savings Association financed the construction of several homes including the project in question at South 3227 Robie Road, Spokane. Aspen Homes purchased building supplies from Valley Best-Way Building Supply, Inc. and they were delivered to the construction site in November, 1983. Payment for those materials, as shown by the invoices and billing statements, was due on the tenth of the month following delivery. Thus, on December 10, 1983, the debtor owed Valley Best-Way $7,015.73 for the materials delivered in November, 1983. The debtor had been having financial difficulties and its account with Valley Best-Way was in arrears at that time. Nevertheless, Valley Best-Way continued to extend credit to the debtor and accepted the debtor's proposal to pay what it could, when it could. Valley Best-Way accepted sporadic payments from the debtor and applied them to several seriously past-due accounts, but not to the account on the South 3227 Robie Road property.

Sterling Savings Association advanced monies to the debtor, Aspen Homes, under its construction loan agreement in the following amounts:

| | |
|---|---|
| November 10, 1983 | $11,250.00 |
| December 9, 1983 | 3,600.00 |
| January 9, 1984 | 9,900.00. |

On January 12, 1984 the debtor filed a petition in bankruptcy. The trustee sold the residence and is holding the funds pending a decision on the priority for payment.

Valley Best-Way served a "Lien Claimant's Notice to Lender" (stop notice) to Sterling Savings Association on February 1, 1984 claiming a lien in the amount of $8,387.30 for sums due for the materials delivered in November, 1983.[1] After re-

---

1. It is not clear from the record how Valley     Best-Way determined to use the sum of

ceiving the stop notice, Sterling Savings Association made no further disbursements to the debtor and endeavored to complete construction itself by making disbursements directly to the suppliers and laborers for work performed.

$8,387.30 in its stop notice. Its November statement to the debtor, Aspen Homes, showed a balance of $7,015.73 which would normally be due on December 10, 1983. The December statement showed the previous balance of $7,015.73 and indicated additional purchases of $1,838.14. When these figures are totaled it appears that sums owing for some of the materials were not included in the stop notice. Due to the credit extension reached between Aspen Homes and its supplier, Valley Best-Way asserts that both the November and December statements were payable on January 10, 1984. The statute at that time required the supplier to wait twenty (20) days after the payment due date before it could file the stop notice. In this case the twenty (20) days would have expired on January 31, 1984 and Valley Best-Way served its stop notice on February 1, 1984.

2. R.C.W. 60.04.210 reads as follows:

*Interim or construction financing—Notice of lien—Duty of lender to withhold from disbursements—Liabilities of lender and lien claimant*

Any lender providing interim or construction financing where there is not a payment bond of at least fifty percent of the amount of construction financing shall observe the following procedures:

(1) Draws against construction financing shall be made only after certification of job progress by the general contractor and the owner or his agent in such form as may be prescribed by the lender.

(2) Any potential lien claimant who has not received a payment within five days after the date required by his contract, employee benefit plan agreement, or purchase order may within twenty days thereafter file a notice as provided herein of the sums due and to become due, for which a potential lien claimant may claim a lien under Chapter 60.04 RCW.

(3) The notice must be filed in writing with the lender at the office administering the interim or construction financing, with a copy furnished to the owner and appropriate general contractor. The notice shall state in substance and effect that such person, firm, trustee, or corporation is entitled to receive contributions to any type of employee benefit plan, has furnished labor, materials and supplies, or supplied equipment for which right of lien is given by this chapter, with the name of the general contractor, agent or person ordering the same, a common or street address of the real property being improved or developed, or if there be none the legal description of said real property, description of

## IS R.C.W. 60.04.210 APPLICABLE?

■ In determining whether the requirements of R.C.W. 60.04.210[2] have been met so that Valley Best-Way may avail itself of the lien priority under subsection (6) of this statute, the parties disagree on whether

the labor, or material furnished, or equipment leased, or a brief statement describing the nature of the contributions owed to any type of employee benefit plan, the name, business address and telephone number of said lien claimant which notice shall be given by mailing the same by registered or certified mail, return receipt requested.

(4) After the receipt of such notice, the lender shall withhold from the next and subsequent draws such percentage thereof as is equal to that percentage of completion as certified in subsection (1) of this section, which is attributable to the potential lien claimant as of the date of the certification of job progress for the draw in question less contracted retainage. The percentage of completion attributable to the lien claimant shall be calculated from said certification of job progress, and shall be reduced to reflect any sums paid to or withheld for the potential lien claimant. Alternatively, the lender may obtain from the general contractor or borrower a payment bond for the benefit of the potential lien claimant in such sum.

(5) Sums so withheld shall not be disbursed by the lender except by the written agreement of the potential lien claimant, owner and general contractor in such form as may be prescribed by the lender, or the order of a court of competent jurisdiction.

(6) In the event a lender fails to abide by the provisions of subsections (4) or (5) of this section, then the mortgage, deed of trust or other encumbrance securing the lender will be subordinated to the lien of the potential lien claimant to the extent of the interim or construction financing wrongfully disbursed, but in no event in an amount greater than the sums ultimately determined to be due the potential lien claimant by a court of competent jurisdiction, or more than the sum stated in the notice, whichever is less.

(7) Any potential lien claimant shall be liable for any loss, cost or expense, including reasonable attorney fees, to the party injured thereby arising out of any unjust, excessive, or premature notice of claim under this section. For purposes of this subsection, "notice of claim" does not include notice given by a potential lien claimant of the right to claim liens under this chapter where no actual claim is made.

Wash.Rev.Code § 60.04.210 (Supp 1986).

At the time Valley Best-Way served its stop notice the statute required that the potential lien claimant wait twenty (20) days, rather than five

Sterling Savings' direct payment to subcontractors constitutes a disbursement of the construction financing and whether the stop notice served by Valley Best-Way was timely. Sterling Savings has argued that the debtor walked away from the construction project. Therefore, Sterling has concluded that it owed the debtor nothing on the construction financing and that it made no further disbursements. The statute, however, is not limited to disbursements made only to the general contractor. Sterling Savings continued to disburse sums directly to subcontractors. Therefore, I am not persuaded by the bank's argument that R.C.W. 60.04.210 does not apply. However, the fact that I have found the statute applicable does not necessarily mean that the bank has wrongfully disbursed funds. That issue will be explored later in this opinion.

## WAS THE STOP NOTICE TIMELY?

The other contention is Valley Best-Way's argument that its stop notice was timely served as to all materials supplied because it had voluntarily extended the payment due date for the debtor.[3] Under my interpretation of the statute this would be immaterial because the extension of the due date would still not affect the amount to which Valley Best-Way is entitled as hereinafter explained.

■ Assuming the supplier and debtor had modified their credit terms, the parties seem to agree that in that case, the stop notice would have been served within the requisite time period. However, the interpretation which the parties have placed upon the statute would reward subcontractors who extend their due date at the ex-

pense of others who continue to supply materials in anticipation of payment from subsequent draws. I do not think this was the intent of the legislature. Under my interpretation of the statute the subcontractor is only entitled to protection under the statute for materials supplied and used for a stage of construction for which a draw has not yet been made. This construction will encourage subcontractors not to grant extensions of payment if they wish to afford themselves of the full benefits of this statute.

## THE GENERAL RULE

Under R.C.W. 60.04.220,[4] a mortgage or deed of trust is prior to all other liens or encumbrances which were not recorded prior to the recording of the mortgage or deed of trust. Under this general rule, it is not disputed that Sterling Savings had a recorded deed of trust before Valley Best-Way delivered materials to the construction site which gave rise to the materialmen's lien.

## THE EXCEPTION

The Washington State legislature created an exception to the general rule on priorities when it enacted R.C.W. 60.04.210. Recognizing that the construction lenders can help prevent future nonpayment of subcontractors once the lender is notified of the problem, the legislature has authorized the lender to withhold sums from the draws to be used to pay subcontractors. Although the statutory language is terribly confusing, the legislative intent is relatively clear. Once the subcontractor notifies the lender that he has delivered materials to the contractor, that a default in payment

(5) days from the date payment was due before he could serve a stop notice. Wash.Rev.Code § 60.04.210 (Supp 1984).

3. *Supra* note 1.

4. R.C.W. 60.04.220 states:
   *Interim or construction financing—Priorities*
   Except as provided in RCW 60.04.050 or in RCW 60.04.200 through 60.04.220 any mort-

gage or deed of trust shall be prior to all liens, mortgages, deeds of trust and other encumbrances which have not been recorded prior to the recording of such mortgage or deed of trust to the extent of all sums secured by such mortgage or deed of trust regardless of when the same are disbursed or whether such disbursements are obligatory.

has occurred, and that he expects to deliver materials in the future, the lender, through the withholding of percentages of each draw may ensure that the subcontractor will be paid in the future. The statute does not put the responsibility on the lender to ensure payment of sums owing to the subcontractor for past services and materials covered by a prior certification of job progress. Those amounts are so to speak "water under the bridge". Subsection (4) of R.C.W. 60.04.210 instructs the lender how to provide for subcontractors who are having trouble getting paid. After receiving notice from the lien claimant, the lender may withhold from the "next draw" to cover a claim for labor and materials that have contributed to that portion of job completion and he may withhold from "subsequent draws" to cover the amount which the lien claimant indicates will become due for future stages of construction.

How much may the lender withhold from the draw?[5] Here, the language "for the draw in question" is the key. From the "next draw", the lender may withhold the percentage which the lien claimant has contributed to the completion of the job as of the date of the certification of job progress "for the draw in question". Thus, assume that on this project, the certifications of job progress were made at stages of 10 percent completion and then 25 percent completion. Assume also, that a stop notice was received after the 10 percent draw had been made. If the subcontractor had delivered $1,000.00 worth of materials which were used in the first stage and $3,000.00 worth of materials which were used and attributable to the second 15% of the completion of the project giving rise to a 25% certification of job progress, then "for the draw in question", that being the one corresponding to the 25% certification, the lender would not be responsible for withholding as to the $1,000.00. The draw for the 10% completion has been made and the lien claimant is left with his materialmen's lien

for that amount. As to the $3,000.00 the lender may withhold from the draw the same percentage as the $3,000.00 bears to the total for labor and materials making up that 15% of the job completion.

In the case at bar the Court concludes that all of the disbursements made after the stop notice collectively constituted the last draw. The statute requires that draws be made only after certification of job progress by the general contractor and the owner or his agent. Since the bank undertook completion of the project itself, it can only be assumed that there were no other certifications of job progress. Had Valley Best-Way notified Sterling Savings that it intended to make future deliveries and had those deliveries been completed, Sterling Savings would have been able to withhold sums from the final draw to cover their payment.

■ Although the statute uses the word "shall", the Court has used the word "may" in discussing the lender's authority to withhold sums from each draw. The position taken by Valley Best-Way that this withholding by the lender is optional is persuasive. The lender has three choices when served with a stop notice. He may discontinue disbursements and foreclose his mortgage or deed of trust, he may withhold the proper percentage on behalf of the lien claimant, or he may continue making disbursements and have his mortgage or deed of trust subordinated to the lien claimant to the extent of funds wrongfully disbursed.

■ In this case, the bank continued making disbursements after the stop notice and would have its deed of trust subordinated to the extent it wrongfully disbursed funds. Since the stop notice was sent February 1, 1984 and Valley Best-Way did not deliver materials which would be covered by draws after that time Sterling Savings was not obligated to withhold any funds

---

5. One commentator has suggested there are two ways to calculate the amount of money to be withheld by the lender from subsequent draws. Michael F. Keyes, *The Construction Lien Prac-* *tice and Procedure Manual for the State of Washington,* at 22, (1976). *See generally,* Note, *Mechanics' Liens: The "Stop Notice" Comes to Washington,* 49 Wash.L.Rev. 685 (1974).

from the final draw and its continued disbursements cannot be considered wrongful. Therefore, it is not necessary to use a formula to determine the extent of the subordination.

The trustee may submit an order permitting disbursal to Sterling Savings Association of the remainder of the funds from the sale of the South 3227 Robie Road property.

