Frank J. VUONO, Kathleen Vuono, Donna D'Ortona and Carol Vuono, Plaintiffs,

v.

NEW YORK BLOOD CENTER, INC., Wheaton Industries, New England Deaconess Hospital, American Red Cross Blood Services, Northeast Region, Doctors and Nurses: John Does 1–10 and Jane Does 1–10, John Does and Jane Does 11–20, Defendants.

Civ. A. No. 86–1445–Y.

United States District Court, D. Massachusetts.

Sept. 13, 1988.

---

744

M. Linda Urso, Urso, Liguori and Urso, Westerly, R.I. for plaintiffs.

John L. Kerr, Morrison, Mahoney & Miller, Boston, Mass., for New York Blood Center, Inc.

Charles Dunn, Dunn & Rogers, Peter Ellis, Foley, Hoag & Eliot, Boston, Mass., for New England Deaconess.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiffs, Frank Vuono, Kathleen Vuono, Donna D'Ortona, and Carol Vuono (collectively, the "Vuonos"), brought this action against New York Blood Center, Inc. ("Blood Center"), a blood manufacturer; Wheaton Industries ("Wheaton"), a manufacturer of glass vials; New England Deaconess Hospital ("the Deaconess"), a hospital; American Red Cross Blood Services, Northeast Region ("Red Cross"), a collector and distributor of blood; and various doctors and nurses, alleging claims of strict liability, breach of warranty, res ipsa loquitur, and negligence. The matter is presently before the Court on the motion of the defendant Blood Center for summary judgment on the negligence claims in the complaint. The issue for consideration is whether a genuine issue of material fact exists concerning the Blood Center's duty to test and inspect the glass vials which contain the blood plasma derivative, serum albumin.

## I. Background

On May 16, 1983, the plaintiff Frank Vuono, a Rhode Island resident, was hospitalized at the Deaconess in order to undergo coronary bypass surgery. During the evening of May 22 and the morning of May 23, Mr. Vuono received an infusion of serum albumin which is a fractionated blood plasma derivative. One vial of the serum albumin administered to Mr. Vuono was contaminated at the time of infusion and, as a result, he became ill, suffered septic shock and Herpes Simplex, and subsequently was prevented from undergoing open heart surgery. The contaminated vial was processed by defendant Blood Center, a New York corporation, which is a federally-licensed blood fractionation facility.

"Fractionation" at the blood processing facility involves separating the serum albumin from the blood plasma, dispensing the serum albumin into glass vials, sealing the vials with rubber stoppers, covering the vials with protective aluminum foil, and packaging the vials in a series of cardboard containers. This process also included filtering out any bacteria in the blood plasma and subjecting the serum albumin to a heat bath for the purpose of killing any contaminants which elude the filtration procedure. The vials of serum albumin were processed in "lots," which were assigned particular identifying numbers. The vial which is the subject of the present lawsuit was part of the Blood Center's lot number 5D33A, and was processed in August, 1982.

Although there is no evidence that the Blood Center failed to follow its standard procedures for processing the serum albumin in this case, there is evidence that the particular glass vial contained a flaw. *See* Deposition of Dr. Martin Stryker at 53–57 (hereinafter, the "Stryker Dep."); Exhibit D, Motion for Summary Judgment by defendant American Red Cross Blood Services—Northeast Region, at 1 (hereinafter, "Exhibit D"). Specifically, there was a narrow fold in the glass surface, known as a "line over." *See* Exhibit D at 1. This "line over" extended across the top of the finish and down the inside of the vial past the sealing contact areas of the rubber stopper. *Id.* Evidence also exists that this flaw is visually identifiable and that the glass fold in the vial is sufficient to catch a fingernail. *Id.;* Stryker Dep. at 83.

Further, there is evidence that this defect interfered with the integrity of the sealed vial, and thus permitted contamination from ambient sources. *See* Stryker Dep. at 59–60. An April 12, 1985 memorandum by an employee of the glass manufacturer Wheaton reports on post-incident testing by Wheaton of the particular vial at issue here. The report states that the test data "indicated the complete lack of seal caused by the 'line over' condition on the glass finish. Zero vacuum readings were found in less than 4 hours storage on the complaint bottle." Exhibit D at 2.

On May 9, 1986, the Vuonos brought this action against defendants Blood Center, Red Cross, Wheaton, the Deaconess and unnamed doctors and nurses, alleging various causes of action under Massachusetts law. On March 24, 1987, this Court dismissed the complaint with respect to defendant Wheaton for lack of personal jurisdiction. On January 27, 1988, this Court granted the motion of the Red Cross for summary judgment on all claims against it, and also granted the motion of the Deaconess for summary judgment on all but the negligence claims. On May 6, 1988, the Court then granted summary judgment for Blood Center on the following claims: strict liability, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, the equal protection challenges to Mass. Gen.Laws ch. 106, sec. 2–316(5) (on its face and as applied), and res ipsa loquitur.

With respect to the Blood Center's motion for summary judgment, the issue remaining before this Court is whether the Vuonos have raised a genuine issue of material fact concerning the negligence claim asserted against the Blood Center; specifically, whether there is a genuine issue of material fact concerning the Blood Center's duty to test and inspect the glass vials containing the serum albumin.

## II. *Discussion*

### A. Summary Judgment Standard.

Under Fed.R.Civ.P. 56(c), summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Under the standards for summary judgment, the party opposing such a motion, however, has an affirmative obligation to prove that there exists a genuine issue of material fact. Explaining the nonmoving party's duty pursuant to Fed.R.Civ.P. 56(e),[1] the Supreme Court, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), stated:

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

477 U.S. at 324, 106 S.Ct. at 2554. Therefore, although the Court "must view the record in the light most favorable to the party opposing the motion, and must indulge all inferences favorable to that party," *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988), the burden falls squarely on the nonmovant to establish the existence of these essential ele-

---

1. Rule 56(e) provides, in relevant part,
   When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
   Fed.R.Civ.P. 56(e).

ments of its case, on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553–54.

B. The Standards of Negligence

In the law of torts, negligence is commonly recognized as the omission to do something which a reasonable person, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or the doing of something which a prudent and reasonable person would not do. *See, e.g., Altman v. Aronson,* 231 Mass. 588, 591, 121 N.E. 505 (1919). *See generally* 57 Am.Jur.2d *Negligence* sec. 68 at 419 (1971). In other words, the standard of conduct in determining the existence of negligence is whether the actor exercised the duty of care which an ordinarily prudent person would exercise under the same or similar circumstances. *See LaClair v. Silberline Mfg. Co.,* 379 Mass. 21, 27, 393 N.E.2d 867 (1979). *See generally* 57 Am. Jur.2d *Negligence* sec. 68, at 419. There is, however, no absolute liability for all harmful conduct; an actor is not an insurer for all her acts.

Applying this negligence standard often requires that the actor's conduct be tested against a background of ordinary usage and custom. The customs of the community, however, although both admissible and relevant on the issue of negligence, are not conclusive, especially where such customs are clearly dangerous and careless. *See* Restatement (Second) of Torts, sec. 295A (1965). In *The T.J. Hooper,* 60 F.2d 737 (2d Cir.), *cert. denied,* 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (1932), Judge Learned Hand eloquently explained:

There are, no doubt, cases where courts seem to make the general practice of the calling the standard of proper diligence; we have indeed given some currency to the notion ourselves. Indeed in most cases reasonable prudence is in fact common prudence; but strictly it is never its

measure; a whole calling may have unduly lagged in the adoption of new and available devices. It never may set its own tests, however persuasive be its usages. Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their omission.

*Id.* at 740 (citations omitted). *See Johnson v. Harry Jarred, Inc.,* 391 So.2d 898, 907 (La.App.1980) (stating that "[t]he jury's conclusion is not clearly wrong because it refused to exonerate Sawyer of negligence based upon defendants' evidence that it is a custom of the industry not to use these safety devices until the well is approaching a depth of known gas location"); *Besette v. Enderlin Sch. Dist. No. 22,* 310 N.W.2d 759, 761 (N.D.1981) (stating that "[e]vidence of custom or usage is not admissible, however, for the purpose of establishing a set standard on the basis of which the conduct in question is to be held negligent or not negligent, but is merely admissible evidence to assist the trier of fact in determining whether or not the conduct of the defendant was, in the particular situation, that of a reasonably prudent person").

In this respect, the negligent standard of the ordinarily prudent person may be a higher standard of care than that standard which is followed by a particular community or industry. Under Massachusetts law, the fact that a certain device or practice is in common use is evidence that its use is not negligent, but such a fact is not conclusive evidence of due care because a large number of persons may fail to exercise due care in their usual practices. *See Corthell v. Great Atlantic & Pacific Tea Co.,* 291 Mass. 242, 243–44, 196 N.E. 850 (1935). The plaintiff may still try to show that the practice of the entire industry is unreasonable, that the community custom lacks "ordinary care." *See Rhode Island Hospital Trust Nat'l Bank v. Zapata Corp.,* 848 F.2d 291, 294 (1st Cir.1988) (applying Rhode Island law).[2]

---

**2.** There are, however, certain circumstances where "[i]f one does what others do in like circumstances, the inference that he [sic] is conforming to the community standard of reasonable conduct may be so strong ... as to establish that the individual was not negligent." *Breault v. Ford Motor Co.,* 364 Mass. 352, 356, 305 N.E.2d 824 (1973) (noting that most courts have held that an individual injured in a car accident was not negligent when, like most peo-

In the present case, Blood Center argues that the plaintiffs' negligence claims cannot survive on the grounds that the Vuonos fail to set forth any facts demonstrating that the Blood Center breached the prevailing standard of care applicable to blood products manufacturers. *See* Memorandum of Defendant New York Blood Center, Inc. in Support of its Motion for Summary Judgment at 22–33. Specifically, the Blood Center contends that the standard of care which the Blood Center owed to Mr. Vuono is that standard established by the blood products manufacturing industry and the applicable FDA regulations. *Id.* at 26. Moreover, the quality control procedures used in testing lot #5D33A, the batch which contained the vial of serum albumin administered to Mr. Vuono, equalled or exceeded both the standard of care of the industry and the FDA regulations. *See id.;* Affidavit of Martin Stryker in Support of the Motion of the Defendant New York Blood Center, Inc. for Summary Judgment. Thus, Blood Center argues, the mandate of Fed.R.Civ.P. 56(e) and the rule of *Kozup v. Georgetown University*, 663 F.Supp. 1048, 1055 (D.D.C.1987) (holding that "[f]or a hospital, [the applicable] standard [of care] is established by looking to the conduct of the medical profession in similar circumstances as of that date), *aff'd in part, vacated in part*, 851 F.2d 437 (D.C.Cir. 1988), requires that summary judgment be granted on the plaintiffs' negligence claims.

As previously discussed, however, conformity with the customs and standards of the industry does not establish conclusively the absence of negligence. Rather, the Court must evaluate any evidence that either the industry custom or the Blood Center's conduct was unreasonable under the circumstances. *See Corthell*, 291 Mass. at 243–44, 196 N.E. 850. Given all of the facts presented by the Vuonos, the Court rules that a genuine issue of material fact exists concerning the Blood Center's duty to inspect and test the glass vials containing the serum albumin.

This Court's opinion is founded on two sources: 1) the deposition of Dr. Martin Stryker, and 2) the report on the defective vial.[3] First, Dr. Stryker testified that: 1) "when it's time to fill the vials, the person who loads the vials onto the conveyor belt going into the vial washing and sterilization equipment is instructed to look at the vials," Stryker Dep. at 103; 2) the defect in the glass vial which contained the serum albumin administered to Mr. Vuono existed at the time of the visual inspection, Stryker Dep. at 113–14; 3) the defect in the vial is "fairly apparent if you look at it closely," Stryker Dep. at 83; 4) the Blood Center had experienced problems with the quality of the Wheaton glass vials, problems which initially occurred in 1980 and resurfaced in April, 1983, Stryker Dep. at 108–10; and 5) Blood Center ceased purchasing the Wheaton 250 milliliter vials for the packaging of serum albumin in late 1983, Stryker Dep. at 111. Second, the Wheaton report on the

---

ple, she did not wear a seatbelt where "the beneficial effect of seat belts [was] not [generally] assumed and no special circumstances existed calling for" their use). If there is undisputed evidence that the defendant acted in accordance with the uniform custom of persons engaged in a similar business, in the absence of showing that such custom is in fact negligent, then the defendant did not act negligently. *See generally* 57 Am.Jur.2d *Negligence* sec. 79, at 430. In this context, however, there must be a lack of evidence showing that the custom itself is negligent.

**3.** The Vuonos provided the one-page affidavit of Louis A. Luzzi, which states in relevant part:
Good manufacturing practice dictates that each container of serum albumin must be suitable for its intended use when it is re-

leased for use. Product integrity must therefore be ensured at each step in the manufacturing process. Lack of visual inspection careful enough to detect a reportedly "fairly apparent" defect at the time of loading the vials onto the conveyor belt prior to filling them is a breach of good manufacturing practice.

Affidavit of Louis A. Luzzi, Exhibit B, Plaintiffs' Objection to the Motion of the Defendant New York Blood Center for Summary Judgment. This affidavit alone, however, is insufficient to raise a genuine issue of fact because Mr. Luzzi's pithy and conclusory opinion is inadequate. *See United States v. Hall*, 424 F.Supp. 508, 534 (D.Okla.1975), *aff'd*, 536 F.2d 313 (10th Cir.), *cert. denied*, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed. 2d 285 (1976).

glass vial stated, "The bottle ... did have a 'line over' which is a narrow fold in the glass surface. The 'line over' extended across the top of the finish and down the inside past the sealing contact areas of the rubber stopper.... Depth of the glass fold was sufficient to catch a fingernail *which is the factory guideline for rejection of this defect."* Exhibit D at 1 (emphasis supplied).

Since the attendant dangers of manufacturing and packaging serum albumin may constitute a hazard to human life, *see* Stryker Dep. at 89, the standard of care required of the Blood Center in this case is extremely high. *See Brennan v. Ocean View Amusement Co.,* 289 Mass. 587, 592, 194 N.E. 911 (1935); *Adams v. Dunton,* 284 Mass. 63, 66, 187 N.E. 90 (1933). In this context, the Blood Center's duty of care may be viewed as a matter of the following variables: 1) the probability that a defective vial will be used in packaging the serum albumin; 2) the resulting injuries if such a vial is used, and 3) the burden of adequate precautions. *See United States v. Carroll Towing Co.,* 159 F.2d 169, 173 (2d Cir.1947) (L. Hand, J.); *see also Maine Yankee Atomic Power Co. v. National Labor Relations Board,* 624 F.2d 347, 349 (1st Cir.1980) (stating that the gravity of an accident at a nuclear power facility requires the employees to exercise "extraordinary vigilance at all times"). Given the facts that 1) in late 1980, the Blood Center was dissatisfied with the quality of the Wheaton vials; 2) an unsterile product caused by a defective vial may constitute a hazard to human life; 3) the person who loads the vials onto the conveyor is instructed to look at the vials; and 4) the defect in this vial is allegedly "fairly apparent if you look at it closely," this Court cannot rule, as matter of law, that Blood Center was not negligent in testing and inspecting the glass vials which contain the serum albumin.[4]

Accordingly, the Court DENIES the motion of the Blood Center for summary judgment on the negligence claims of the Vuonos.

---

4. *Kozup,* the authority relied upon by the Blood Center, does not, of course, control here because it is an interpretation by another district of District of Columbia, not Massachusetts, law. Moreover, *Kozup* is factually dissimilar to the present case. In *Kozup,* the decedent received an infusion of blood which was contaminated with the AIDS virus. In granting the defendants' motions for summary judgment, the court stated:

> The medical community was not yet convinced that AIDS had an asymptomatic carrier state, a necessary predicate to a conclusion that AIDS might be transmissible by blood. Thus, the facts and dates clearly preclude plaintiffs' success on a theory of negligence as to [defendant's] failure to screen out high risk donors.

663 F.Supp. at 1056–57. In contrast to *Kozup,* where the danger of AIDS transmission through blood transfussions and the attendant need to screen donor blood was still largely unknown at the time of the defendant's alleged negligence, the present case involves a well-known danger: blood contaminated by the failure of container integrity. *See* Stryker Dep. at 84–89.