**James ROE, Plaintiff,**

v.

**MILES LABORATORIES, INC.; The Oregon Health Sciences University; and Everett W. Lovrien, M.D., Defendants.**

No. A89–098 Civ.

United States District Court, D. Alaska.

Dec. 4, 1989.

Mark E. Wilkerson, David G. Stebing, Guess & Rudd, Anchorage, Alaska, and Robert K. Jenner, Freeman & Richardson, Bethesda, Md., for plaintiff.

Sigurd E. Murphy, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, Alaska, for defendant Miles Laboratories, Inc.

George N. Hayes, Robert L. Eastaugh, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, Alaska, and Dave Frohnmayer and Rodney K. Norton, Dept. of Justice, Salem, Or., for defendants Oregon Health Sciences University and Everett W. Lovrien, M.D.

## ORDER

HOLLAND, Chief Judge.

(Dismissal Granted)

Under the trade name "Koate", defendant Miles Laboratories marketed the clotting component of human blood. Through a process called "fractionation", "Factor VIII" (the clotting substance) is extracted from donated human blood of various individuals. It is now known that the process by which Koate was manufactured did not eradicate or exclude from this product the virus or viruses which can give rise to Acquired Immune Deficiency Syndrome (AIDS). At times here relevant, plaintiff (a hemophiliac) used Koate to control hemorrhaging. He is presumably now an AIDS carrier.

Defendant Miles Laboratories moves to dismiss as to those portions of plaintiff's complaint which seek to recover on a theory of strict liability. Plaintiff's complaint does not employ the terms "strict liability" or "strict tort liability". Miles Laboratories assumes, however, that such is the thrust of at least Count I of the complaint and, judging from plaintiff's response to the instant motion, Miles Laboratories' supposition as to plaintiff's intent is accurate.

Oral argument was initially requested by defendant Miles Laboratories. That request was subsequently withdrawn, and plaintiff has not renewed the request for oral argument. The court finds the briefing submitted by the parties to be thorough and sufficient. Oral argument is therefore deemed unnecessary.

Plaintiff's opposition to Miles Laboratories' motion to dismiss contains substantial factual information concerning this case. For purposes of this motion, the court assumes the facts to be as alleged by plaintiff in his complaint. The court addresses the motion to dismiss as a strict legal proposition under Rule 12(b)(6), Federal Rules of Civil Procedure. The question before the court is, therefore: "Assuming the facts to be as alleged by plaintiff, can he, as a matter of law, make claim against Miles Laboratories for strict products liability?" For the reasons stated below, the court has concluded that this question must be answered in the negative, and Miles Laboratories' motion to dismiss is therefore granted as to Count I and any other portions of the complaint which may have been intended as an assertion of a claim of strict liability—that is, liability founded upon either contract (warranty) or tort, without respect to fault.

In 1968, the legislature of the State of Alaska amended AS 45.02.316, a part of the sales chapter of the Alaska version of the Uniform Commercial Code, so as to add the following language which is not a part of the official text of the Uniform Commercial Code:

(e) Implied warranties of merchantability and fitness are not applicable to a contract for the sale of human blood, blood plasma or other human tissue or organs from a blood bank or reservoir of tissue or organs. The blood, blood plasma, tissue, or organs may not, for the purposes of this chapter, be considered commodities subject to sale or barter, but shall be considered medical services.

The following year, the Alaska Supreme Court rendered its decision in *Clary v. Fifth Avenue Chrysler Center, Inc.*, 454 P.2d 244 (Alaska 1969). In this decision,

the Alaska Supreme Court adopted, as the law of the State of Alaska, the principle of strict liability in connection with the manufacture and sale of goods. In so doing, the Alaska Supreme Court observed:

> The purpose of imposing such strict liability on the manufacturer and retailer is to insure that the cost of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves. Sales warranties serve this purpose fitfully at best.

*Id.* at 248.

■ By virtue of the provisions of AS 45.02.316(e), the legislature of the State of Alaska patently intended to relieve manufacturers and vendors such as Miles Laboratories from any implied warranty obligations as regards the sale of human blood, blood plasma, and body tissue and organs. The court views this statute as remedial in nature. It is thus to be liberally construed. *Donnybrook Building Supply Co. v. Alaska National Bank of the North*, 736 P.2d 1147, 1151 (Alaska 1987).

It takes no great amount of imagination, and plaintiff does not argue otherwise, to conclude that by enacting Section 316(e), the state legislature intended to encourage commerce with respect to blood, blood plasma, and body tissue and organs by relieving manufacturers and vendors of such products from any implied warranties of merchantability or fitness. It would be totally inconsistent with the purpose of this statute for the court to hold that implied warranty claims cannot be asserted against Miles Laboratories, but that the subsequently recognized case law strict liability claims are allowable. To allow strict liability claims would totally emasculate Section 316(e), for any plaintiff with a claim such

as the one here asserted would simply plead strict tort liability and disavow any intention to make a claim on the theory of implied warranty. Blood banks and purveyors of products derived from blood would be worse off than they were before the enactment of Section 316(e).

The appropriateness of the foregoing conclusion is bolstered by the 1970 decision of the Alaska Supreme Court in *Bachner v. Pearson*, 479 P.2d 319 (Alaska 1970). In *Bachner*, the Alaska Supreme Court expressly recognized the similarity of implied warranty claims and strict liability products claims. *Id.* at 326–27 n. 15. Moreover, the Alaska Supreme Court and this court concur in Dean Prosser's observation that implied warranty claims in situations such as this are indistinguishable from strict liability claims.[1] The court concludes, therefore, that AS 45.02.316(e) is sufficiently broad to preclude strict liability claims with respect to the sale of blood, blood plasma or other human tissue or organs. The court will not permit Section 316(e) to be evaded by simply changing the name of a plaintiff's cause of action when the substance of the claim is the same.

■ Plaintiff argues, however, that Koate (and its active ingredient, Factor VIII) are neither blood nor blood plasma. Plaintiff points out that, unlike some jurisdictions, Alaska's so-called "blood shield" statute (Section 316(e)) does not expressly extend to "products derived" from blood or blood plasma. Moreover, plaintiff argues that in characterizing transactions in such items as "medical services", the state legislature restricted operation of Section 316(e) to "the purposes of this chapter".

The former argument—which seeks to distinguish between blood or plasma and Factor VIII—conflicts both with Alaska's

---

1. Although the writer was perhaps the first to voice it, the suggestion was sufficiently obvious that all of the trouble lay with the one word "warranty", which had been from the outset only a rather transparent device to accomplish the desired result of strict liability. No one disputed that the "warranty" was a matter of strict liability. No one denied that where there was no privity, liability to the consumer could not sound in contract and must be a matter of

tort. Why not, then, talk of the strict liability in tort, a thing familiar enough in the law of animals, and abnormally dangerous activities, nuisance, workmen's compensation, libel, misrepresentation, and respondeat superior, and discard the word "warranty" with all its contract implications?

*Id., quoting* W.L. Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn. L.Rev. 791, 802 (1966).

"plain meaning rule" for the interpretation of statutes, *North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534, 540 n. 7 (Alaska 1978), and with the liberal construction rule for remedial statutes, *Donnybrook Building Supply Co. v. Alaska National Bank of the North*, 736 P.2d 1147 (Alaska 1987).

Plaintiff would have the court hold that, because Koate or Factor VIII is simply a fraction or a "slice" of whole blood, Section 316(e) should not apply. Plaintiff has come forward with no legislative history to suggest that the state legislature had such a narrow purpose in mind for its blood shield statute. Plaintiff's interpretation would in substance require the administration of whole blood or blood plasma in all cases in order to attain the protection intended by Section 316(e). The court concludes that the terms "blood" or "blood plasma" in Section 316(e) are to be understood to mean and comprehend all components of blood or blood plasma, irrespective of whether the same are delivered whole or fractionalized.

Plaintiff's reference to the "for purposes of this chapter" portion of Section 316(e) is not instructive. The chapter in question is the Alaska version of the Uniform Commercial Code provisions having to do with the sale of goods. In this case, we are patently dealing with a situation which, but for Section 316(e), would be a sale of goods. The quoted language simply tells us that blood and blood plasma are not to be considered "commodities" or "goods". More importantly, the quoted language in no way qualifies the statutory preclusion of implied warranties (including strict liability as discussed above) for purposes of this case.

In this area as well, the court's confidence with respect to its view of Section 316(e) is bolstered by the decision of another district court which interpreted and applied a Massachusetts statute which was identical, for all practical purposes, to Section 316(e). In *Vuono v. New York Blood Center, Inc.*, 696 F.Supp. 743 (D.Mass. 1988), the plaintiff also sued the purveyor of "a fractionated blood plasma derivative". *Id.* at 744. The Massachusetts District Court ruled in favor of the defendant, as to both implied warranty and strict liability claims.

For the foregoing reasons, Miles Laboratories' motion to dismiss is granted as to plaintiff's Count I and as to any other portions of plaintiff's complaint which were intended to form the basis for a strict liability or implied warranty theory of recovery.